Matter of Wellman (2022 NY Slip Op 05006)

Matter of Wellman

2022 NY Slip Op 05006

Decided on August 23, 2022

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 23, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
Cynthia S. Kern
Jeffrey K. Oing
Tanya R. Kennedy
John R. Higgitt, JJ.

Motion No. 2022-01858 Case No. 2022-01862 

[*1]In the Matter of Lisa A. Wellman, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Lisa A. Wellman, (OCA Atty. Reg. No. 2334118) Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on March 27, 1990.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Denice M. Szekely, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Lisa A. Wellman was admitted to the practice of law in New York by the Third Judicial Department on March 27, 1990. The Third Judicial Department, where respondent was admitted, has ceded jurisdiction in this matter to the First Judicial Department, where respondent previously maintained a registered address for the 2000-2001 biennial period (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.7[a][2]). Respondent's current registered address is in New Hampshire.
The relevant facts of this matter arise from respondent's practice of law in the state of New Hampshire and concern two separate clients.
The first client, H.G., retained respondent to represent her in a parenting dispute with B.B. On May 16, 2019, H.G. and B.B., together with their counsel, attended a mediation concerning a parenting plan. Although H.G. and B.B. initially agreed upon a few things, the mediation ended abruptly when B.B. walked out. A follow-up hearing was scheduled for June 4, 2019. By email dated May 20, 2019 to respondent, B.B.'s counsel indicated that his client was willing to enter a partial settlement as to terms agreed upon during the mediation, leaving the issue of child transportation for the court to decide. Respondent forwarded this email to H.G. to look over so that they could discuss. H.G. later called respondent to express her disagreement with the proposed plan's summer schedule.
By email dated June 2, 2019, respondent asked B.B.'s counsel whether B.B. would agree to a transportation compromise: "either switch — my client transports on Friday and your client transports on Sunday or agree to a halfway meeting point both times."
By email dated June 3, 2019, respondent also emailed H.G. asking if she would agree to "transport on Friday and [B.B.] transport[s] on Sunday." That same day, counsel for B.B. replied to respondent's suggestion in her email dated June 2, 2019, stating:
"I believe the following comports with your suggestion below. If this is agreeable to your client, let me know. I can notify the Court that we have settled, and I can probably get [B.B.'s] signature tomorrow and drop it off at your office for signature by you and your client."
Respondent immediately forwarded counsel's email to her client, stating, "[t]his should resolve all issues." Later that day, respondent replied to opposing counsel's email asking, "I'm at court, do you want me to tell them it's settled [?]," to which B.B.'s counsel replied, "Please advise the Court that its [sic] settled. I think you will have to file a motion to continue, and if so, I assent." Respondent replied, "I filed a motion to continue."
Among other things, respondent's motion to continue stated that the parties had reached an agreement on a parenting plan that was being circulated for signature, and that they requested that their hearing be continued, which the court did. On the [*2]evening of June 3, 2019, respondent emailed her client: "[w]e have cancelled court tomorrow in the hopes that we are going to have an agreement." Respondent's client, who assumed that it was B.B. that requested the continuance, replied the following day (i.e., the day the hearing had been scheduled) that she was "not even going to consider [B.B.'s] parenting proposal until he reimburses ½ of what [she] already spent." B.B. signed the parenting plan on June 4, 2019, and it was delivered to respondent's office on that same day. H.G. sent respondent an email of even date in which she inquired if there was a new parenting plan. Respondent replied there was no new parenting plan yet: "it has not been fully executed nor approved by the Court. The existing parenting plan remains in effect."
On June 10, 2019, respondent informed opposing counsel via email that her "client has not yet signed the new parenting plan, it appears that she has had a change of mind about it. I am working with her and need to meet with her in person to try to get her back on track." Opposing counsel responded that he was "confused" because H.G. had indicated to his client that she was not going to sign anything whereas he had understood that the case was settled. Respondent subsequently advised counsel that H.G. was unwilling to sign the new parenting plan.
On July 12, 2019, B.B. filed a Motion to Enforce Agreement and Request Attorneys' Fees, which outlined the aforementioned communications between counsel. On July 15, 2019, respondent filed a Motion to Schedule Hearing in which she stated that after "reviewing the final version of the parenting plan, [H.G.] no longer believes that the terms are acceptable nor in the best interest of [the minor child]. As such, she has elected not to proceed with the settlement."
The court held a hearing on September 5, 2019, at which time H.G. learned that it was respondent who filed the motion to continue. By order dated September 12, 2019, the court granted B.B.'s motion to approve the parenting plan without H.G.'s signature and without approval from the guardian ad litem (GAL). The court denied the request for counsel fees.
The court wrote:
"the Court finds that the parties had been engaged in negotiations,
and that the petitioner was aware of the issues, and aware of the
communications taking place between her counsel and opposing counsel.
There is no evidence to suggest that counsel was not authorized to enter
into the settlement.
"[Respondent] filed an assented to motion to continue a scheduled final
hearing representing that the parties had reached an agreed-upon
parenting plan which was being circulated for signature.
"The Court finds that subsequent to reaching an agreement on behalf of her client, for which she was authorized, the petitioner essentially changed her mind, and seeks to retract her agreement. It is exactly this type of
circumstance which the law seeks to deter."
Respondent and H.G. appealed the court's decision [*3]but were unsuccessful. By email dated December 8, 2019, H.G. requested a copy of her file and asked why respondent elected to cancel the hearing scheduled for June 4, 2019. Respondent replied that, "the parenting plan reflected what had been agreed upon at the mediation," and that it was her "belief that it was acceptable and only needed to be circulated for execution." Responded further wrote that if she "misunderstood" H.G., that may be a basis to "modify the parenting plan." H.G. then retained new counsel.
Respondent admitted that she did not confirm with H.G. that her proposed resolution of the transportation issue was acceptable before she suggested it to opposing counsel, and that she did not confirm that H.G. was still in agreement with the parenting plan as discussed at mediation before requesting a continuance from the court. This violated New Hampshire Rules of Professional Conduct (New Hampshire Rules) 1.2(a) (requiring a lawyer to abide by a client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued) and 1.4 (requiring a lawyer to communicate with client).
In the second client matter at issue, respondent represented a father, N.J., in post-divorce proceedings concerning N.J.'s relationship with his children who, in 2017, expressed a desire to terminate their relationship with their father. By order dated November 13, 2018, the court ordered that the parties and the children complete a child-centered family evaluation conducted by Dr. B.G. to determine whether the relationship deteriorated as a result of parental alienation caused by the children's mother, A.S., or as a result of N.J.'s own actions. Dr. B.G. prepared a detailed 72-page report (Report) addressing many private matters about the parents and their children.
The mother's attorney filed a motion in February 2019, with respondent's consent, requesting that the court keep the Report confidential. The court granted the motion by order dated April 29, 2019, as follows:
"[The] complete report may be released to [N.J.'s] individual therapist and to the family therapist who is engaged for the purpose of providing family therapy to [N.J.] and the minor children. [N.J.] and [A.S.] shall communicate to the therapists that no copies of [the] report should be made or disseminated."
Following this order, N.J. had an appointment with his individual therapist, who had not yet gotten a copy of the Report but who was entitled to a copy. On the day of the appointment, respondent put a copy of the Report in an envelope for N.J. to pick up and deliver to his therapist. According to respondent, "at the time it seemed like an efficient method for the counselor to get the report she was entitled to, sooner rather than later."
Because the court also ordered the parties to meet with a family counselor — who would also be entitled to a copy of the Report if retained — N.J. contacted a potential family counselor[*4], J.E., who then contacted A.S. about taking on the matter. At that time, J.E. indicated to A.S. that he had received a copy of the Report from N.J.'s "Dropbox." When counsel for A.S. called respondent to inquire about how N.J. obtained a copy of the Report, respondent answered that she did not know but admitted that she gave N.J. a copy to give his individual therapist. N.J. claimed he had deleted the copy. Nevertheless, A.S. viewed the situation as an invasion of her and her children's privacy because, among other things, she could not be sure that N.J. did not keep a copy of the Report.
On April 9, 2020, counsel for A.S. filed a Motion for Contempt and Request for Evidentiary Hearing. He indicated that he intended to call respondent as a witness to determine whether she gave N.J. a copy of the Report. Respondent filed an objection. A hearing was scheduled for October 23, 2020, but then continued. It does not appear to have been rescheduled to date. N.J. has since retained new counsel.
Respondent agreed that she should not have provided N.J. with a copy of the Report to give to his individual therapist. She also agreed that she had a duty to abide by the court order, which she violated. Therefore, respondent violated New Hampshire Rule 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal). Respondent also admitted to violating New Hampshire Rule 8.4(a) (prohibiting a lawyer from violating or attempting to violate the New Hampshire Rules).
The parties agreed that respondent's conduct caused actual and potential injury to the affected parties: 1) H.G. is required to abide by a parenting plan that she did not entirely agree with, without the benefit of the GAL's point of view and without a hearing on the matter; and 2) A.S. and her children had their privacy rights violated, and the Report may have been altered in some way before it was received by the prospective family counselor, who had not yet been approved by the court to receive the report. The parties agreed to sanctions of a public censure for H.G.'s matter and a suspension for N.J.'s matter.
In addition to the above, there are two aggravating factors in this matter. First, a prior public censure was issued to respondent on December 11, 2018, pursuant to an approved stipulation entered into the New Hampshire Attorney Discipline Office (ADO), arising out of respondent's failure to inform another (third) client that she was on probation following her release from incarceration. Respondent never reported the 2018 discipline to our Court, as required by 22 NYCRR 1240.13(b). Notably, New York's Rules of Professional Conduct (22 NYCRR 1200.0) (NY Rules) 1.1, 1.3 and 1.4 proscribe the identical conduct for which respondent was issued the 2018 public censure in New Hampshire. Second, indisputably, respondent has substantial experience in the practice of law.
However, the Attorney Grievance Committee (AGC) notes that in both matters respondent [*5]acted without any dishonest or selfish motive, cooperated fully in the investigation, and has expressed remorse. Indeed, she explained that both matters were to some degree the result of a lack of diligence on her part due to a lack of staffing in her office. Given that the incidents giving rise to these matters occurred in approximately the same 2019-timeframe, the parties agreed that a period of monitoring was appropriate to permit respondent to address these issues. Thus, the parties agreed that "given the baseline sanction and consideration of aggravating and mitigating circumstances, a six-month suspension, stayed for one year, serves the purpose of discipline and is an appropriate sanction in this case." Respondent agreed to comply with certain conditions for one year, including providing the ADO with quarterly reports as to corrective steps taken to manage her staffing and caseload issues, and no further misconduct. By order dated February 19, 2021, the New Hampshire Supreme Court Professional Conduct Committee approved this agreement and imposed a stayed six-month suspension with conditions on respondent. Respondent complied with the terms of her six-month stayed suspension and, by order dated March 15, 2022, the matter was closed.
By motion dated May 3, 2022, the AGC moves for an order, pursuant to Judiciary Law § 90(2), 22 NYCRR 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction and suspending her for three months. Although this motion was served on her by email, on consent, and by regular mail at her registered address, respondent has failed to appear in this proceeding.
Respondent has not reported any of the above discipline to our Court, which is in violation of 22 NYCRR 1240.13(d). Her New Hampshire misconduct also violated the NY Rules. Indeed, the New Hampshire Rules that respondent was found to have violated contain language that is substantially similar to the NY Rules. Specifically, respondent violated: 1) rule 1.2(a), due to her failure to consult with her client about the proposed resolution of the weekend transportation issue, and her failure to obtain the client's express approval as to the final terms of the parenting plan; 2) rule 1.4, due to her failure to confirm with her client that she accepted respondent's proposed resolution to the parenting plan before communicating it to opposing counsel, and failure to confirm that she still agreed with the parenting plan before respondent requested a continuance of the hearing and advised opposing counsel that they would settle; 3) rule 3.4(c) by ignoring a court order not to make copies of or to disseminate the Report that she provided to her client and a new, unapproved therapist; and 4) rule 8.4(a) and (d), which prohibit a lawyer from violating or attempting to violate the rules of professional conduct and engaging in conduct that is prejudicial to the administration of justice, respectively.
Although [*6]this is a motion for reciprocal discipline, because "the policy of this Court is not to stay suspensions," we depart from the sanction imposed by New Hampshire upon respondent (Matter of Hagendorf, 17 AD3d 25, 27 [1st Dept 2005]). Rather, a three-month suspension of respondent, as requested by the AGC, is appropriate here (see e.g. Matter of Kreis, 180 AD3d 5 [1st Dept 2019]). As noted, respondent has defaulted in this proceeding and, therefore, does not raise any defenses to her conduct. In any event, no defenses would be available as in a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13(b)(3), a respondent may only raise the following defenses: 1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; 2) an infirmity of proof establishing the misconduct; or 3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state. Respondent cannot establish any of the foregoing because: 1) she was given proper notice and an opportunity to be heard in New Hampshire, where she fully participated and entered into a stipulation with the ADO; 2) there was ample evidence presented establishing all of the misconduct and, indeed, respondent admitted to her misconduct; and 3) as noted, the misconduct underlying her discipline in New Hampshire also constitutes misconduct in New York. There is also no dispute that respondent failed to report both her 2021 stayed suspension and her 2018 public censure in New Hampshire to this Court as required by 22 NYCRR 1240.13(d).
Accordingly, the AGC's motion should be granted and respondent is suspended from the practice of law in the State of New York for a period of three months until further order of this Court.
All concur.
IT IS ORDERED that the Attorney Grievance Committee's motion for reciprocal discipline pursuant to 22 NYCRR 1240.13, predicated upon similar discipline imposed by the New Hampshire Supreme Court, is granted, and respondent Lisa A. Wellman, is suspended from the practice of law in the State York, for a period of three months, commencing September 23, 2022, and until further order of this Court; and
IT IS FURTHER ORDERED that during the period of suspension and until further order of this Court, pursuant to Judiciary Law § 90, respondent Lisa A. Wellman, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and
IT IS FURTHER ORDERED that respondent Lisa A. Wellman, is directed to fully comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR [*7]1240.15), which are made part hereof; and
IT IS FURTHER ORDERED that if respondent has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: August 23, 2022